RECORD NO. 09-4482

In The

# United States Court Of Appeals

### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## DERRICK LAMONT SUMMERS,

*Defendant – Appellant.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

_____

### REPLY BRIEF OF APPELLANT
_____

Claire J. Rauscher
**Executive Director**
**FEDERAL DEFENDERS OF**
 **WESTERN NORTH CAROLINA, INC.**

Ann L. Hester
*Counsel of Record*
Beth Blackwood
*Research and Writing Attorney*
**129 West Trade Street**
**Suite 300**
**Charlotte, North Carolina 28202**
**(704) 374-0720**

*Counsel for Appellant*

# **TABLE OF CONTENTS**

**Page:**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................3

    I.    *Rodriquez* rejected the fundamental premise underlying this Court's opinions in *Harp* and *Jones*, and the government's arguments to the contrary misinterpret *Rodriquez*...............................3

    II.    The Sixth Circuit's decision in *Pruitt* is consistent with Summers' position and undermines the government's argument.........4

    III.    This Court has not yet considered the effect of *Rodriquez* on *Jones* and *Harp*....................................................................8

    IV.    The government's new argument that Summers could have been found to have committed a federal violation is waived and violates the Constitution and the Federal Rules of Criminal Procedure..........................................................................10

        A.    The government raises its argument for the first time on appeal; therefore, it has been waived.......................................11

        B.    Finding Summers to have violated the conditions of his supervised release by committing a federal offense not alleged in the petition would violate the Fifth Amendment and the Federal Rules of Criminal Procedure. ...........................................................................12

CONCLUSION ..................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

i

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Gagnon v. Scarpelli*,
  411 U.S. 778 (1973)........................................................................12

*Morrissey v. Brewer*,
  408 U.S. 471 (1972)........................................................................12

*Muth v. United States,*
  1 F.3d 246 (4th Cir.1993) .............................................................11

*State v. Watkins*,
  659 S.E.2d 58 (N.C. App. 2008) ....................................................7

*United State v. Harp*,
  406 F.3d 242 (4th Cir. 2005) .............................................. *passim*

*United States v. Hill*,
  539 F.3d 1213 (10th Cir. 2008) ...................................................6, 7

*United States v. Jones*,
  195 F.3d 205 (4th Cir. 1999) .............................................. *passim*

*United States v. Lemons*,
  280 Fed. Appx. 258 (4th Cir. 2008) ..............................................8

*United States v. McNeil*,
  415 F.3d 273 (2d Cir. 2005) ....................................................12, 13

*United States v. Polk*,
  281 Fed. Appx. 195 (4th Cir. 2008) ......................................8, 9, 10

*United States v. Pruitt*,
  545 F.3d 416 (6th Cir. 2008) ...............................................4, 5, 6

*United States v. Rodriquez*,
128 S. Ct. 1783 (2009)........................................................... *passim*

*United States v. Simmons*,
2009 WL 2371939, No. 08-4475 (4th Cir. July 7, 2009) .............................8

*United States v. Taste*,
303 Fed. Appx. 149 (4th Cir. 2008) ........................................8, 9

*United States v. Taylor*,
301 Fed. Appx. 248 (4th Cir. 2008) ........................................8, 9

*United States v. Watson*,
2009 WL 1931226, No. 08-4904 (4th Cir. Aug. 4, 2009)........................8, 9

**Statutes:**

21 U.S.C. § 841(a)(1).............................................................11, 13

N.C. Gen. State § 15A-1340.13 ...............................................7

N.C. Gen. State § 15A-1340.16 ...............................................7

N.C. Gen. State § 15A-1340.17(d) .........................................6

**Constitutional Amendment:**

U.S. Const. Amend. V.............................................................2, 12, 13

**Sentencing Guidelines:**

USSG § 7B1.1 .......................................................................13

USSG § 7B1.1(a)(1)...............................................................1

K.S.A. 21-4704(d)..................................................................7

**Rules:**

Fed. R. Crim. P. 32.1.................................................................................12, 13

Fed. R. Crim. P. 32.1(b)(2)(A)..........................................................................12

# INTRODUCTION

The district court sentenced Derrick Summers to 30 months' imprisonment at his supervised release revocation hearing after finding that he committed the North Carolina offense of possession with intent to sell and distribute marijuana. The court held that this violation was Grade A after finding that the North Carolina offense was punishable by more than a year's imprisonment. *See* USSG § 7B1.1(a)(1). But, as the government acknowledges, because of Summers' criminal history, North Carolina law "would only authorize a 10–month sentence if [Summers] was convicted in state court." Govt Br. at 5. The government also concedes that the Supreme Court's opinion in *United States v. Rodriquez*, 128 S. Ct. 1783 (2009), held that "a separate recidivist statute triggered by the actual defendant's criminal history could be used to determine that defendant's maximum sentence for a given crime." Govt Br. at 14. Despite conceding the major points in Summers' Opening Brief, the government nonetheless argues that the district court's Grade A violation finding was correct because Summers could have been punished by more than a year's imprisonment. The government claims this is so because, rather than overruling prior Fourth Circuit precedent, *Rodriquez* is actually in accord with those opinions. Govt Br. at 6.

The government's argument is incorrect. The Supreme Court's holding in *Rodriquez* directly conflicts with this Court's reasoning in the Fourth Circuit's

prior decisions of *United State v. Harp*, 406 F.3d 242 (4th Cir. 2005) and *United States v. Jones*, 195 F.3d 205 (4th Cir. 1999), as well as its progeny. The Supreme Court's reasoning in *Rodriquez* makes clear that Summers' offense was not punishable by more than a year's imprisonment because, under North Carolina's unique sentencing statute, a person with Summers' criminal history could never be punished by more than ten months' imprisonment for the alleged offense. Accordingly, the district court should not have found that Summers committed a Grade A supervised release violation.

Additionally, the government claims that Summers violated his supervised release by committing a federal offense that is punishable by five years in prison, even though he was never charged with this violation in his supervised release petition, and the government did not make this argument to the district court. Because the government raises this issue for the first time on appeal, it is waived. Furthermore, finding a violation on this basis would violate the notice requirements of the Federal Rules of Criminal Procedure and the Fifth Amendment.

## ARGUMENT

**I.** **_Rodriquez_ rejected the fundamental premise underlying this Court's opinions in _Harp_ and _Jones_, and the government's arguments to the contrary misinterpret _Rodriquez_.**

The government erroneously claims that _Rodriquez_ "in no way undermined the central holding of _Jones_ and _Harp_—that the maximum sentence is defined as the sentence that a defendant with the worst possible criminal record could have received for committing that crime." Govt Br. at 14-15. This argument fails to acknowledge one of the central teachings in _Rodriquez_: that a recidivist crime is a different "offense" than a non-recidivist offense. _Rodriquez_, 128 S. Ct. at 1788-89.

In _Rodriquez_, the Supreme Court rejected the very premise on which _Jones_ and _Harp_ were based by acknowledging that a defendant's criminal history _is_ relevant in determining the maximum term of imprisonment prescribed for an "offense." The Court considered whether Rodriquez's prior convictions subjected him to an enhancement pursuant to the Armed Career Criminal Act, which required the Court to consider whether "a maximum term of imprisonment of ten years or more is prescribed by law" for the defendant's prior "offense." _Rodriquez_, 128 S. Ct. at 1786. In finding that the recidivist statute did apply to Rodriquez, the Court made clear that the statutory maximum applicable to a particular defendant must be determined by reference to that defendant's _own_ criminal history. _Id_. at 1788. Through this reasoning, the Court also established that repeat offenses are

different and more serious than those committed by non-recidivists. *Id.* at 1789 ("[A] second or subsequent offense is often regarded as more serious because it portends greater future danger and therefore warrants an increased sentence for purposes of deterrence and incapacitation"). This reasoning cannot be reconciled with *Jones* and *Harp*, which treat every prior North Carolina offense as a recidivist offense, completely eliminating the distinction between recidivist offenses and non-recidivists offenses established in *Rodriquez*.

And despite the government's protests that this issue is narrowly defined and not applicable here (Govt Br. at 10), in fact, *Rodriquez's* reasoning is equally applicable to any recidivism enhancement requiring a court to determine whether a defendant's prior offense is "punishable" by a particular term of imprisonment. With Summers, it means that the court must consider his criminal history in determining the maximum punishment for an offense. Given Summers' criminal history and the charge, that maximum term of imprisonment is 10 months.

## II.    The Sixth Circuit's decision in *Pruitt* is consistent with Summers' position and undermines the government's argument.

The Sixth Circuit announced in *United States v. Pruitt* that *Rodriquez* is "contrary" to *Harp* on the issue of whether a sentencing court must consider a defendant's prior criminal record in determining whether a prior North Carolina offense was punishable by imprisonment for more than one year. 545 F.3d 416, 424 (6th Cir. 2008). The Sixth Circuit found no reasonable basis on which to

distinguish the North Carolina scheme's consideration of a defendant's prior record level and the recidivism enhancement provision at issue in *Rodriquez*. *Id*. at 423. Under each, the Sixth Circuit found "the prior criminal record of the defendant operates to increase the defendant's sentencing exposure, reflecting a legislative judgment to authorize harsher criminal penalties for persons who have previously engaged in criminal activity." *Id*. Going further, the Sixth Circuit held that "*Rodriquez* persuades us that it is necessary to consider the defendant's particular prior record level–and not merely the worst prior record level–in determining whether a conviction was for an offense 'punishable' by a term exceeding one year." *Id.* at 424. Through this reasoning, the Sixth Circuit squarely rejected *Harp*, and–by implication–also *Jones*, upon which *Harp* relied. Thus, contrary to the government's assertion, *Pruitt* is compelling authority for the proposition that *Jones* and *Harp* are no longer good law following *Rodriquez*.

The government mistakenly argues that *Pruitt* "rests on a misapprehension of North Carolina state law" because the Sixth Circuit found the North Carolina statute at issue "does not itself prescribe a statutory maximum" so that the top of the applicable aggravated range served as the statutory maximum. *Id.* at 422; Govt. Br. at 11. According to the government, the statutory maximum for a defendant who commits a Class I felony is 15 months' imprisonment. Govt Br. at 11; North Carolina General Statute § 15A-1340.17(d). But the Government's

argument merely identifies the maximum sentence in the sentencing grid for a defendant with the worst possible criminal history, not any maximum sentence found in the statute of conviction.

The government fails to describe *any* scenario where a person with Summers' criminal history could ever receive a sentence of more than 10 months' imprisonment. This is so, as established in *Pruitt*, because "the maximum aggravated sentence under the North Carolina scheme serve[s] as the 'statutory maximum' because the judge could not impose a sentence above that maximum." *Pruitt*, 545 F.3d at 422. In other words, under North Carolina's sentencing scheme, the statutory maximum is effectively tailored to each criminal history level. *See id*. at 422-23. For Summers, that statutory maximum is 10 months.

The government also attempts to weaken *Pruitt* by relying on the Tenth Circuit case, *United States v. Hill*, 539 F.3d 1213 (10th Cir. 2008) (en banc). *See* Govt. Br. at 12-13. Rather than undermining *Pruitt* or defeating Summers' argument, however, *Hill* demonstrates the uniqueness of North Carolina's structured sentencing scheme. Citing *Rodriquez*, the Tenth Circuit found that the Kansas scheme, which "may" cap sentences, did not decrease the "maximum term" of imprisonment that a defendant could face. *Id*. at 1219-20. However, the Kansas scheme, unlike North Carolina's sentencing scheme, allows for upward departures above the top of the sentencing guidelines grid. *Id*. at 1218 (defendant faced 11

months imprisonment "[a]lthough the state court could have departed upward" if aggravated circumstances were proven beyond a reasonable doubt); *see also* K.S.A. 21-4704(d) ("The sentencing guidelines grid . . . define[s] presumptive punishments for felony convictions, subject to judicial discretion to deviate for substantial and compelling reasons and impose a different sentence in recognition of aggravating and mitigating factors as provided in this act.")  In contrast, the North Carolina scheme allows for *no* departures. *State v. Watkins*, 659 S.E.2d 58, 59 (N.C. App. 2008); N.C. Gen. State §§ 15A-1340.13 (2007); 15A-1340.16 (2007).  Therefore, in North Carolina, even if aggravating factors are found, a defendant charged with the same class of crime and criminal history as Summers could *never* be sentenced to more than 10 months' incarceration, while the same defendant, under the Kansas scheme, *could* receive a sentence higher than the top of the Kansas guidelines range.[1]

---

[1] In *Hill*, to show that the Kansas sentencing scheme was not in conflict with *Rodriquez*, the Tenth Circuit stated that the statutory maximum for a crime is the amount of time a person with the highest severity level could receive.  539 F.3d 1213 at 1219.  The court stated, "[a] defendant convicted of a severity level VIII crime with a more extensive criminal history does not commit a different crime. Instead he is simply exposed to a greater sentence under the guidelines."  *Id*.  This statement directly contradicts *Rodriquez*.  Even if it did not, however, under North Carolina's scheme, where a person's criminal history level places an absolute upper limit on his sentence, there can be no doubt of the legislature's intent to make a recidivist offense a different and more serious offense than one committed by someone with a lesser criminal history. *See Rodriquez*, 128 S. Ct. at 1789.

**III.  This Court has not yet considered the effect of *Rodriquez* on *Jones* and *Harp*.**

Based on this Court's unpublished decisions, the government argues that *Jones* and *Harp* are still binding precedent.  Govt Br. at 14 (citing *United States v. Simmons,* 2009 WL 2371939, No. 08-4475 (4th Cir. July 7, 2009) ; *United States v. Watson,* 2009 WL 1931226, No. 08-4904 (4th Cir. Aug. 4, 2009);  *United States v. Taste*, 303 Fed. Appx. 149 (4th Cir. 2008); *United States v. Taylor*, 301 Fed. Appx. 248 (4th Cir. 2008); *United States v. Polk*, 281 Fed. Appx. 195 (4th Cir. 2008); *United States v. Lemons*, 280 Fed. Appx. 258 (4th Cir. 2008)).  This Court, however, has not squarely addressed *Rodriquez* or its effect on *Jones* and *Harp* in any of these cases.

As discussed in Summers' Opening Brief, *Lemons*, *Simmons* and *Watson* do not stand for the proposition that *Jones* and *Harp* are still good law.  Op. Br. at 20-21.  *Lemons* was issued within days after *Rodriquez* was decided and followed *Harp* without ever mentioning *Rodriquez*.  There is no indication in *Lemons* that any of the parties brought *Rodriquez* to the Court's attention.  In *Simmons*, the defendant argued only that his sentence could not constitute a "felony drug offense" punishable by more than a year because there were no aggravating factors present that would increase the sentence to above a year.  2009 WL 2371939, at *1-2. Since the defendant did not raise the issue, the Court obviously did not address how, after *Rodriquez*, a defendant's maximum sentence under North Carolina is

limited by his criminal history when the district court cannot depart from that sentence under any circumstances.  Similarly, in *Watson*, the Court also failed to analyze North Carolina's unique sentencing scheme in light of Rodriquez.  2009 WL 1931226, at *1.

In *Taste*, the appellant filed an *Anders* brief "averring that there are no meritorious issues for appeal."  303 Fed. Appx. at 150-51.  Thus, the appellant did not argue that *Jones* and *Harp* were no longer good law following *Rodriquez*.  Nor did this Court consider that issue.

Although the appellant in *Taylor* argued that his prior North Carolina drug offenses were not "felony drug convictions" because his sentencing range for those offenses was 8–10 months, he conceded that this issue was foreclosed by *Harp*.  301 Fed. Appx. at 250.  The Court declined to reconsider *Harp* on grounds that one panel cannot overrule another–without ever mentioning *Rodriquez*.  *Id*.

Finally, in *Polk*, the issue was whether, in determining the maximum sentence applicable to the appellant's prior conviction, the sentencing court was to apply the laws in effect at the time of the prior conviction.  281 Fed. Appx. at 196-97.  The Court cited *Harp* for the holding that the determination of whether the prior conviction was punishable by a term of imprisonment exceeding one year is governed by the law in effect on the date of the prior conviction.  *Id*. at 197.  This

issue is not relevant in Summers' case. Accordingly, *Polk* has no bearing on whether *Rodriquez* overrules *Jones* and *Harp*.

So, while the government is correct that some Fourth Circuit cases have continued to apply the holdings or *Harp* and *Jones*, in doing so, the Court has never considered whether, in light of North Carolina's unique sentencing scheme, *Rodriquez* conflicts with the reasoning of those cases. They are not, as the government suggests, evidence that *Rodriquez* did not alter the reasoning of *Harp* and *Jones*. Rather, they are evidence that the Court has not yet evaluated the reasoning of *Harp* and *Jones* in light of *Rodriquez*.

## IV. The government's new argument that Summers could have been found to have committed a federal violation is waived and violates the Constitution and the Federal Rules of Criminal Procedure.

The government argues that even if *Rodriquez* has overruled *Harp* and *Jones*, the Fourth Circuit can, on its own, make a determination of fact that Summers violated a federal statute, an allegation never made in the petition to revoke his supervised release. Govt Br. at 15-17. Such an argument fails on two levels: the government waived it by not raising it before the district court, and it also violates Summers' constitutional and statutory right to receive notice of the crimes for which he has been charged. The supervised release violation petition alleged that Summers had violated the conditions of supervision by being arrested and charged with felony possession with intent to sell and deliver marijuana in

Mecklenburg County, North Carolina.  (JA 120).  The petition did not allege that Summers had committed a federal crime.

### A. The government raises its argument for the first time on appeal; therefore, it has been waived.

In its response brief, the government alleges for the first time that Summers could also have been found guilty of violating 21 U.S.C. § 841(a)(1), which is punishable by more than a year.  Govt Br. at 15. The government, however, never raised this argument in the district court nor objected that the petition filed by the United States Probation Office failed to allege that Summers had violated a federal statute.  This argument is therefore waived.  *See Muth v. United States,* 1 F.3d 246, 250 (4th Cir.1993) (holding that issues raised for the first time on appeal are generally waived absent exceptional circumstances).  There are very limited exceptions to the general rule that issues not raised in district court are waived, such as where refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice.  *Id*.  But, since the government has not alleged or set forth facts for any exceptional circumstances justifying departure from the general rule and since the government did not raise this issue with the district court, the government's argument is waived.

**B.    Finding Summers to have violated the conditions of his supervised release by committing a federal offense not alleged in the petition would violate the Fifth Amendment and the Federal Rules of Criminal Procedure.**

The Fifth Amendment Due Process Clause guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime . . . nor be deprived of life, liberty, or property, without due process of law."  U.S. Const. Amend. V.  The Supreme Court has long recognized that due process protections extend to those under government supervision.  *See Morrissey v. Brewer*, 408 U.S. 471 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (both recognizing that certain minimal due process protections, including notice of the allegations against a defendant, extend to those under government supervision).  The right to written notice of one's alleged supervised release violations is codified in Rule 32.1 of the Federal Rules of Criminal Procedure, which sets out the required procedure for a federal supervised release or probation revocation proceeding.  The individual subject to a revocation hearing "is entitled to [] written notice of the alleged violation."  Fed. R. Crim. P. 32.1(b)(2)(A).

The Second Circuit found notice in a supervised release petition inadequate in *United States v. McNeil*, 415 F.3d 273 (2d Cir. 2005).  There, the Court remanded with instructions to vacate and re-sentence because the district court had based its sentence on the finding of a cocaine trafficking offense, a Grade A offense, even though the petition had alleged only cocaine possession, a Grade B

offense.  *Id*. at 277-78.  Although the government there urged the court to consider the defendant's "actual conduct" of trafficking cocaine base, the Second Circuit recognized:

> The Government misreads [Application] Note [1] [of USSG § 7B1.1] to mean that the grade classification can be based on the description of [the defendant]'s actual conduct as trafficking even though *the violation charged in the petition was simple possession*.  Allowing [the defendant] to be sentenced for a trafficking violation would arguably violate Due Process because the petition may not have afforded sufficient notice of the more serious charge.

*Id.* at 278 (emphasis added).

Under *McNeil*, the government cannot accuse a defendant of a new law violation at the revocation hearing if the defendant did not first receive notice of that violation in the petition.  Accordingly, Summers would not have had sufficient notice that he had been accused of violating 21 U.S.C. § 841(a)(1) even if the government had brought it up for the first time at his revocation hearing. And certainly, the government cannot now claim that Summers was on notice of this federal offense after informing him of it for the very first time in its response brief to the Fourth Circuit.

A finding that Summers violated the conditions of his supervised release by committing a federal offense not alleged in the violation petition would violate Federal Rule 32.1 and Summers' Fifth Amendment rights.  The Court should reject the Government's argument suggesting that this Court rely on allegations not made

in the district court in order to affirm the district court's finding of a Grade A violation.

## **CONCLUSION**

For the reasons stated above and in the Opening Brief, Summers respectfully requests this Court to vacate Summers' sentence and remand his case to the district court for re-sentencing.

DATED this 9th day of November, 2009.

Respectfully submitted,

Claire J. Rauscher, Executive Director
FEDERAL DEFENDERS OF
  WESTERN NORTH CAROLINA, INC.

/s/ Ann L. Hester
Ann L. Hester
*Counsel of Record*
Assistant Federal Defender

Beth Blackwood
Research and Writing Attorney
129 West Trade Street
Suite 300
Charlotte, NC 28202
(704) 374-0720

ATTORNEYS FOR APPELLANT DERRICK LAMONT SUMMERS

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>3,150</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportionally-spaced typeface using <u>Microsoft Word 2003</u> in <u>14 point Times New Roman</u>.

<u>/s/ Ann L. Hester</u>
Counsel for Appellant

Dated:  November 9, 2009

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on November 9, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Mark A. Jones
OFFICE OF THE U.S. ATTORNEY
Carillon Building
227 West Trade Street
Charlotte, NC 28202

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ *Carly A. Ramey*
Carly A. Ramey
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA 23219